UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| DAVID T. ANKENBRUCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:05-CV-86-TS |
| | ) | |
| ROCHESTER MIDLAND CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

**A. Background**

For twenty-four years, the Plaintiff, David Ankenbruck, was employed as a sales representative by the Defendant, Rochester Midland Corporation. In July 2004, the Defendant sold the facility where the Plaintiff was working. As part of the sale, the Defendant helped the Plaintiff to secure his employment with the buyer and, as a result, refused to pay the Plaintiff severance benefits described in the employee handbook.

On March 8, 2005, the Plaintiff sued the Defendant in this Court, seeking payment under the Defendant's severance policy. On March 15, 2006, the Plaintiff moved for summary judgment on his claims. That same day, the Defendant also moved for summary judgment on the Plaintiff's claims. The Court finds that ERISA is not implicated in this case and, as a result, the Court lacks jurisdiction over the Plaintiff's claims.

**B. Facts**

The Defendant manufactures and sells industrial application products, such as specialty chemicals, personal care products, water treatment products, and food safety products. Until 2004, it also had a division that distributed janitorial products. The facilities that sold janitorial products were in Seattle, Tucson, and Fort Wayne.

The Plaintiff was employed for twenty-four years as a sales representative at the Defendant's janitorial division in Fort Wayne. During the entire period of his employment, the Defendant had an Employee Handbook, which was distributed to all employees, including the Plaintiff. Among other things, the Handbook described the Defendant's Pay in Lieu of Notice Policy:

> **Purpose:** To provide partial income for an involuntarily terminated employee while unemployed.
>
> **Eligibility:** [An employee] with at least one (1) year of service who has been separated from the Company without cause. Reasons may include:
> Permanent layoff (position eliminated)
> Early retirement at Company option
> Discharge for incompatibility with job requirements
> Voluntary resignation at Company request
>
> This pay in lieu of notice policy does not apply to:
> Voluntary resignation
> Discharge for cause
> Retirement
> Death
> Refusal of suitable alternate employment by employee
>
> **Schedule of Eligibility:**
>
> | Length of Service | Pay Allowance** |
> |---|---|
> | Less than 1 year | None |
> | At least 1 year | 1 week |
> | At least 2 years | 2 weeks |
> | At least 3 years | 3 weeks |
> | At least 4 years | 4 weeks |
> | Each additional year | 1 week |
> | Maximum of 25 years | 25 weeks |

> \*\*In case of sales personnel, this base pay figure will be an average of the last four months' earnings and does not include expenses and allowances.
>
> Form of payment: Lump sum; other arrangements may be made depending on the amount of the payment and/or the desires of the employee. Contact Human Resources for further information.

(*Id.*)

In 2001, the Defendant started selling its janitorial divisions, beginning with the Seattle division. As part of the sale, the purchaser provided two of the Defendant's employees at that division with immediate employment. At that time, the Defendant's upper management conferred and decided not to pay severance benefits to those two employees under the Pay in Lieu of Notice policy because they experienced no break in employment. The Defendant followed the same practice in its subsequent sales of the Fort Wayne and Tucson divisions, in relation to employees who obtained employment with the buyers as part of the sales. On the other hand, the Defendant paid the benefits to employees of all three facilities if they were not hired by the purchasers, without any regard to whether they were unemployed for any period of time after being laid off. For example, a Fort Wayne employee, Matthew Lyons, who immediately after his layoff began working for another company, and who, as a result had no break in employment, received such payment.

The Plaintiff sold the Fort Wayne janitorial division to Corporate Express in July 2004. As a condition of the sale, the Defendant requested that Corporate Express offer the Plaintiff a position in which he could continue selling janitorial products to the Defendant's customers. Consequently, the Plaintiff submitted his resume to Corporate Express, which interviewed him for the job. Corporate Express offered the position to the Plaintiff before the sale took place, and the Plaintiff experienced no break in employment between his two jobs. In his new position, the Plaintiff was required to sell a different and more diverse line of products than what he had sold for the

3

Defendant. At his new job, the Plaintiff's pay was 20% less than it had been at the Defendant's.

Following the precedent set by the sale of the Seattle division, the Defendant refused to pay the Plaintiff benefits under the Pay in Lieu of Notice Policy. Had he been found eligible, the Defendant would have paid him $31,556.

From 2001 until 2005, the Defendant paid severance under its Pay in Lieu of Notice Policy to 71 out 317 terminated employees.

## C. The Parties' Contentions

The Plaintiff submits that the Pay in Lieu of Notice Policy was a plan covered by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et. seq.*, because the Defendant had to maintain an ongoing administrative program to meets its obligations under the policy. In addition, the Plaintiff suggests that the oversight of the policy required the Defendant to make nonclerical judgment calls. The Plaintiff asserts that the Court should review the Defendant's denial of the severance benefits *de novo*, as it had no discretion in executing the policy. Further, the Plaintiff argues in the alternative that, even if the policy was not covered by ERISA, it is a valid contract under which the Defendant must pay benefits to the Plaintiff.

The Defendant insists that the policy was not covered by ERISA because it neither had to periodically administer the policy nor needed to exercise nonclerical discretion. In the alternative, the Defendant argues that, even if ERISA applied, the Court should review the denial of benefits under the "arbitrary and capricious" standard and should rule against the Plaintiff. It maintains that the policy states explicitly that the benefits were guaranteed only to those employees who experienced a period of unemployment. Finally, the Defendant objects to the Plaintiff's

4

characterization of the policy as a contract between them, arguing that the handbook was merely a guide and a reference.

**D. Breach of Contract Claim**

The Plaintiff's claim in the alternative for breach of contract is inappropriate in this case. This is a state claim that involves neither federal question nor an amount in controversy exceeding $75,000, so as to confer jurisdiction either under 28 U.S.C. §§ 1331 or 1332. The Court could address this claim only under the principle of supplemental jurisdiction. However, even this option is improper.

If, on the one hand, the Court finds that ERISA governs the Defendant's Pay in Lieu of Notice Policy, the state claim will be preempted, regardless of the outcome of the ERISA claim. On the other hand, if ERISA does not control this case, the Court has no original jurisdiction over the suit so as to exercise supplemental jurisdiction over the state claim. *See Benes v. The Prudential Ins. Co. of Am.*, 2006 WL 1156567, at * 2 (N.D. Ill. 2006) (citing *Lister v. Stark*, 890 F.2d 941, 946 (7th Cir. 1989), and *Clark v. Hewitt Assocs.*, 294 F. Supp. 946, 953 (N.D. Ill. 2003)); s*ee also* 28 U.S.C. § 1367(a) (to exercise supplemental jurisdiction over related claims, the court must have original jurisdiction over at least one of those claims). Accordingly, the Court will dismiss the Plaintiff's breach of contract claim.

**E. ERISA Claim**

**(1)** *ERISA's Scope of Coverage*

ERISA is the statute regulating employee pension and welfare benefit plans. An employee welfare benefit plan is "any plan, fund, or program which was . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries [specified

5

benefits]." 29 U.S.C. § 1002(1). ERISA may include plans that provide severance benefits. *See Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 7 (1987) ("Section 1002(1)(B) has been construed to include severance benefits paid out of general assets, as well as out of a trust fund."); *Bowles v. Quantum Chem. Co.*, 266 F.3d 622, 631 (7th Cir. 2001).

> The decisive inquiry in determining whether a severance plan falls within ERISA's coverage is whether the plan requires an ongoing administrative program to meet the employer's obligation. ERISA applies when a severance plan potentially places periodic demands on an employer's assets that create a need for financial coordination and control.

*Id.* (citations, quotation marks, and brackets omitted). But in addition to periodic demands, to fall under ERISA, a severance policy must require an "employer to make 'nonclerical judgment calls' on multiple occasions," *see id.*; the policy should not be "capable of mechanical application," *id.* at 632. If the employer has no discretion in determining whether the benefits should be paid and does no more than simple calculations to determine the amount of the benefit that is owed to an employee as a result of some triggering event, then ERISA's protections do not apply. *Young v. Wash. Gas Light Co.*, 206 F.3d 1200, 1203–04 (D.C. Cir. 2000); *see also Bowles*, 266 F.3d at 632 ("To do little more than write a check hardly constitutes the operation of a benefit plan.") (quoting *Fort Halifax*, 482 U.S. at 12). What is more, an ongoing administrative scheme presupposes "careful claims processing." *Collins v. Ralston Purina Co.*, 147 F.3d 592 (7th Cir. 1998).

**(2) *Defendant's Pay in Lieu of Notice Policy is Outside of ERISA's Scope of Coverage***

The Pay in Lieu of Notice Policy did not require an ongoing administrative scheme so as to be covered under ERISA. Although the payments under the policy were periodic, they amounted to no more than simple check writing to eligible employees. Unlike in *Bowles* and *Collins*, upon

6

which the Plaintiff relies significantly, the Defendant did not have to exercise nonclerical discretion to determine whether employees qualified for severance payments.

In *Bowles* and *Collins*, the defendant employers faced buyouts. To discourage their upper-level managers from leaving, the employers entered into contracts with them, promising certain benefits if the change in control resulted in any substantial reduction of their duties and responsibilities. Once the change of control took place, some of those managers, believing that their duties and responsibilities diminished, demanded the benefits. The employers refused the payments and the cases ended up in federal courts. The plaintiffs insisted that the federal courts had no subject matter jurisdiction over these contracts. The defendants, however, argued that the contracts were preempted by ERISA because they required ongoing administrative programs.

The Seventh Circuit agreed with the defendants. In both cases, the court held that, when the employer must periodically look at each claimant's records to decide whether his or her job responsibilities changed significantly enough so as to require payments under the contract, the employer is exercising "nonclerical judgment calls," characteristic of plans under ERISA. *See Collins*, 147 F.3d at 596 ("The agreement required [the employer] to pay only if a manager's job responsibilities were 'substantially reduced,' which sets a standard but hardly an easily discernable one."); *Bowles*, 266 F.3d at 632 (the employer "made a 'nonclerical judgment call' as to whether [changes in employment] diminished [the plaintiff's] authority, duties, responsibilities, or status.").

But in the case before the Court, the Defendant's periodic consideration under the Pay in Lieu Policy required no discretion and no nonclerical judgment call. Rather, the process was self-executing and simple: once an employee was terminated, a simple check of his or her files would inform a human resources clerk whether the termination was with or without cause. If the employee

7

was terminated without cause, a clerk could then calculate the severance pay according to a simple mathematical formula. Such minimal clerical tasks, even if multiple, are insufficient to turn the Defendant's policy into an ERISA plan. *See Velarde v. Pace Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997) (a determination whether an employee was terminated for cause is a "minimal quantum of discretion [in]sufficient to turn a severance agreement into an ERISA plan"); *Lefebvre v. Duff & Phelps Inv. Mgmt. Co.*, 2004 WL 2434235, at *2 (a determination whether an employee was fired for cause "did not require multiple decisions and it did not require decisions to be made on an ongoing basis" so as to constitute an ongoing administrative program); *D'Oliviera v. Rare Hospitality Int'l., Inc.*, 150 F. Supp. 2d 346, 353 (D.R.I. 2001) (a determination of whether employees were terminated for cause does not create an administrative burden substantial enough to invoke ERISA).

This process was not any different for employees who began working for the purchasers of janitorial facilities in Seattle, Tucson, and Fort Wayne. With one exception: before the sale of the Seattle division, the Defendant's top management made a one-time decision that the employees, who began working for the purchasers of the divisions, would not be paid severance benefits. After that decision was reached, it was implemented uniformly in all three cities. But this additional factor did not change the level of discretion afforded to the Defendant in paying under the policy. Although it now had one more factor to consider—whether a terminated employee began working for the purchaser of the division—that question could be answered with a straight "yes" or "no." Any clerk could review the Defendant's files and determine whether terminated employees were eligible for the severance pay. Contrary to the Plaintiff's claims, this did not require any long-term process or administrative scheme. Whether the employees would be hired by the purchasers was determined

during the negotiations of the sale. Although, to get the jobs, the employees still had to be interviewed by the purchasers, the outcome of the interviews could be easily confirmed. Such mechanical application of the policy is a far cry from the ongoing administrative programs that fall under ERISA's coverage. Accordingly, the Court cannot construe the Defendant's Pay in Lieu Notice Policy as a plan under ERISA.

## CONCLUSION

The Court finds that the Pay in Lieu Notice Policy did not constitute a plan under ERISA and that the Court lacks jurisdiction over both of the Plaintiff's claims. *See Rice v. Panchal*, 65 F.3d 637, 646 (7th Cir. 995) (where a claim does not fall within the scope of ERISA, the court lacks subject matter jurisdiction). Accordingly, the Court dismisses the Plaintiff's Complaint.

SO ORDERED on August 30, 2006.

                                                    S/ Theresa L. Springmann  
                                                   THERESA L. SPRINGMANN  
                                                   UNITED STATES DISTRICT COURT